UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARY BRESCIA, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:04CV1680(PCD) |
| | : | |
| DAVID LEFF, THOMAS MORRISSEY | : | |
| PAMELA AEY ADAMS, and DIANE | : | |
| CHISNALL JOY, | : | |
|     Defendants. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Mary Brescia, former employee of the Department of Environmental Protection of the State of Connecticut ("DEP"), brings this employment discrimination action against David Leff, Thomas Morrissey, Pamela Aey Adams, and Diane Chisnall Joy, employees and officials of the DEP, alleging that they constructively discharged her from her job in violation of the Equal Protection Clause of the U.S. Constitution, that they tortiously interfered with her contractual rights, and that Defendants Adams and Joy conspired to deprive her of a promotion. Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons explained below, Defendants' Motion for Summary Judgment [Doc. No. 51] is **granted.**

**I.   BACKGROUND**

Plaintiff Brescia was first employed by the Department of Environmental Protection in 1986 and over the years moved upward through various positions at Dinosaur State Park. (Def.'s Def.'s Local Rule 56(a)(1) Statement ¶¶ 1, 3, 5, 7.)[1] In 2003, she was temporarily appointed to

---

[1] With regard to facts taken from Def.'s Local Rule 56(a)(1) Statement, the facts are admitted by Plaintiff unless otherwise noted.

be an Environmental Education Coordinator (EEC) of Dinosaur State Park to fill a position vacated by a retirement. (Id. ¶ 7.) Her supervisor, Mark Rickert, recommended her for the permanent job, and he had her review a draft of the job description language. (Id. ¶¶ 7, 14.) In August, 2003, a DEP "Promotional Opportunity for DEP Employees Only" was posted for the position of EEC at Dinosaur State Park (id. ¶ 15), and Ms. Brescia and Margaret Enkler were the only two applicants for the job. (Id. ¶ 20.) Both were interviewed by Mr. Rickert and Defendants Adams and Joy, and both were deemed qualified. (Id. ¶¶ 22, 23.) In a memo to Defendant Morrissey, the acting bureau chief, Mr. Rickert reported the interviewers' recommendation of Ms. Enkler while noting the strengths and distinctions of each applicant. Materials relating to the job posting, Ms. Brescia's and Ms. Enkler's applications and interviews, and the interviews' recommendation were presented to the DEP commissioner who ultimately made the appointment. (See Ex. 22 to Def.'s Mem. in Support of Mot. for Summ. J.) Upon Enkler's appointment, Plaintiff resigned, citing an impending "difficult and uncomfortable work environment" (Def.'s Local R. 56(a)(1) Statement ¶ 30) and disagreement with the DEP's opinion of her qualifications and oversight. (Id. ¶ 33.) Plaintiff filed a union grievance, alleging that the DEP's decision to appoint Ms. Enkler was discriminatory. (Ex. 29 to Def.'s Mem. in Support of Mot. for Summ. J.) The Union review board denied Plaintiff's grievance because of its inability "to conclude that the Agency engaged in discrimination or false counseling." (Id. ¶ 36.)

In October, 2004, Plaintiff filed this action, alleging Defendants' violation of her rights under the Equal Protection Clause, tortious interference with her contractual rights, and civil conspiracy to deprive her of a promotion. The crux of her claims is that she was denied an EEC

position in favor of another as "one or more of defendants intentionally and for improper reasons desired such a result." (Pl.'s Local R. 56(a)(2) Statement ¶ 8.) Now pending is Defendants' Motion for Summary Judgment [Doc. No. 51], arguing that no personal jurisdiction exists over Defendants Leff, Morrissey, and Adams, who are sued in their official capacity, that Plaintiff has failed to raise genuine issues of triable fact for trial, and that Defendant officials are entitled to qualified immunity. In response, Plaintiff voluntarily withdrew her civil conspiracy claim. The Court will consider the remaining claims in turn.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v.Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate, Anderson, 477 U.S. at 225. However, when moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant can satisfy its burden of establishing

that there is no genuine of material fact in dispute by pointing to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.") The non-moving party, in order to defeat summary judgment, must then come forward with "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. In determining whether the non-moving party has met its burden, the Court draws "all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Rodriguez v. City of New York, 72 F.3d 1051, 1060 (2d Cir. 1995) (citations omitted). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

**III.   DISCUSSION**

**A.   Improper Service of Process**

Defendants first move for summary judgment for Defendants Leff, Morrissey, and Adams on the grounds that no personal jurisdiction exists over them due to Plaintiff's improper service

of process. According to Defendants, copies of the summons and complaint were left in the Attorney General's office, but such service is not statutorily authorized and Defendants Leff, Morrissey, and Adams had not authorized anyone there to accept service on their behalf. (Def.'s Mem. in Support of Mot. for Summ. J. at 3-4.) In response, Plaintiff does not contest the lack of proper service of process; rather, she claims that Defendants have waived the inadequacy. Pursuant to Fed. R. Civ. P. 12(g) and 12(h)(1), the defenses of lack of personal jurisdiction and insufficient service of process are waived if not included in a Rule 12 motion or in a responsive pleading. Defendants filed a motion to dismiss pursuant to Rule 12 on December 2, 2004, in which they failed to assert this deficiency. After that motion was denied, Defendants filed an answer which claimed a defense of lack of personal jurisdiction. During discovery, however, Defendants Leff, Morrissey, and Adams participated in depositions as fully as did the other defendants, never once raising the issue or proclaiming the intent to defend themselves on the basis of lack of personal jurisdiction. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 13.) Plaintiff now claims that Defendants' failure to include this defense in their December 2, 2004 motion constituted a waiver that continues to apply, notwithstanding their subsequent conduct.

The commentary to the Federal Rules of Civil Procedure provides that "If later conduct by the defendant is found inconsistent with preservation of the jurisdictional objection, the court may hold that the defendant waived it[.]" FED. R. CIV. P. 4 cmt. C4-43 (1993). Courts have held that Defendants' subsequent participation in the discovery process constitutes a waiver of the defense of deficiency of process. See, e.g., Datskow v. Teledyne, Inc., Cont'l Prods. Div., 899 F.2d 1298, 1303 (2d Cir.), cert. denied, 498 U.S. 854 (1990) (defendant's participation in scheduling discovery, a conference with the magistrate, and motion practice barred it from

complaining about defective service of process). In this case, Defendants' participation in depositions without reasserting their jurisdictional defense is relatively weak support for Plaintiff's contention that subsequent conduct has waived the defense asserted in their answer. However, Defendants do not address Plaintiff's point on this matter and offer no argument as to why waiver of the defense should not apply. (See Defs.' Reply to Pl.'s Opp. to Defs.' Mot. for Summ. J.) In the absence of any showing as to why Defendants should not be deemed to have waived the defense of lack of personal jurisdiction by participation in depositions without a disclaimer, the claim of waiver is found to be valid. The Defendants' motion for summary judgment will not be granted in favor of Defendants Leff, Morrissey, and Adams on the basis of lack of proper service.

**B.      Equal Protection Claim**

Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 claim alleging a violation of her rights under the Equal Protection Claim of the U.S. Constitution. "[T]he equal protection guarantee... extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." Barton v. City of Bristol, 294 F. Supp. 2d 184, 194-95 (D. Conn. 2003) (citing Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2000)). Because Plaintiff has not described or claimed unequal treatment as a member of a class, she must make a "class of one" equal protection claim. To do so, Plaintiff must allege that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Defendants contend that Plaintiff has shown nothing to suggest that either procedurally nor on

qualification she was treated differently from other similarly situated.  Plaintiff's only claim of comparison for discriminatory purposes was Ms. Enkler, the only other applicant to and the ultimate appointee to the position Plaintiff claims she was unjustly denied.  Unless she can demonstrate that the Defendants treated her differently from Ms. Enkler and selected Ms. Enkler with no rational basis for doing so, she has no basis for a claim of deprivation of equal protection.

Even assuming that Plaintiff was treated differently from Ms. Enkler, Plaintiff has failed to show that Defendants had no rational basis for selecting Ms. Enkler for the EEC position.  Plaintiff must overcome the "strong presumption of validity" in governmental decisions which exists if there is "any reasonably conceivable state of facts that could provide a rational basis" for Ms. Enkler's selection.  Galligan v. Town of Manchester, 2003 U.S. Dist. LEXIS 8362, *20 (D. Conn. 2003) (citing Heller v. Doe by Doe, 509 U.S. 312, 319 (1993)).  The interview committee's recommendation for Ms. Enkler discusses each applicant's strengths and weaknesses and concludes that Enkler is "the most suited for the position."  (Defs.' Local Rule 56(a)(1) Statement ¶ 23.)  Plaintiff's contention that Mr. Rickert favored her selection is belied by his recommendation of Ms. Enkler to the bureau chief for the EEC position.  (Id.)  There is nothing in the recommendation that suggests anything other than the consideration and comparison of the respective merits of each candidate, and there is nothing to suggest that the hiring decision was based on anything other than the interviewers' contemplation as to the candidate best suited to perform the position.  Plaintiff claims that she was not accorded the advantage of insider advancement, but this argument does not prove unequal treatment–if anything, it proves equal treatment of the two candidates as Ms. Enkler was not disadvantaged by

being an outsider. Plaintiff also complains that the interviewers treated her unfairly by considering factors in Ms. Enkler's background that were outside the criteria listed in the outline of the interviewing procedure, but there is no reflection in the interviewers' recommendation that they based their decision on any factors other than those totally relevant to the question of who they believed to be best suited to fulfill the purposes and functions of the job. (See Ex. 22 to Defs.' Local Rule 56(a)(1) Statement.) Even if Defendants treated Plaintiff unequally by considering certain factors favorable to Ms. Enkler, their consideration of such factors cannot be considered irrelevant to an applicant's expected job performance and so cannot be dismissed as irrational or arbitrary. Likewise, the interviewers' view that Plaintiff was likely to preserve the status quo, as opposed to their view that Enkler would bring a fresh view to the park, was a relevant factor in considering the park's future. Plaintiff's claim that she was unfairly judged by a poor interview performance (Pl.'s Opp. at 8) also does not demonstrate that Defendants irrationally compared her to Ms. Enkler or judged her according to irrelevant standards. Although the recommendation included in the record makes no suggestion as to the weight accorded the interview, it would not be irrational if Ms. Brescia's interview performance undermined her candidacy. To suggest that Plaintiff was short-changed in her interview because Enkler was late for her own, thereby cutting into the time allotted for Plaintiff's interview, is to grasp at straws, apparently because there is nothing in the record to show that Plaintiff was not accorded a full opportunity to be interviewed. In sum, the plaintiff has not alleged any facts whatsoever that would establish that Defendants' treatment of her was without rational basis, that is, that Defendants' actions were irrational and wholly arbitrary or without legitimate reason. See Galligan, 2003 U.S. Dist. LEXIS 8362, at *20.

Plaintiff fails to raise any inference of Defendants' improper treatment of her or discriminatory intent. One might question the fact that one interviewer failed to fill out an Interview Ranking form or that another's form indicates changes were made to its scoring. (See Pl.'a Opp. at 9; Ex. 22, Defs.' Local Rule 56(a)(1) Statement.) However, the record is bereft of any suggestion or basis for an inference that the ultimate committee recommendation reflected anything but the respective interviewers' views of the qualifications of the two candidates and the superiority of Ms. Enkler's. Even if, as Plaintiff argues, "unposted factors were being weighed into the decision" (Pl.'s Opp. at 9), such consideration does not, as discussed above, constitute unequal treatment or transform the recommendation into the realm of irrationality. Lastly, there is no basis to infer, as Plaintiff suggests (id. at 19), that the failure to fill Enkler's prior position had any bearing on the recommendation or appointment of Ms. Enkler.

Plaintiff also alleges that, as a result of Ms. Enkler's being promoted instead of her, she was constructively discharged from her position at Dinosaur State Park. This allegation appears to function as an argument that, even if Defendants had a rational basis for hiring Ms. Enkler instead of Plaintiff, Defendants acted discriminatorily against Plaintiff by constructively discharging her. In support of this claim, Plaintiff argues that, as a result of her not being promoted to the EEC position, she became obligated to train the person appointed in her stead and then work as her subordinate. That she characterizes as untenable. She casts this discomfort in legal, and self-serving, terms, describing her experience as believing that she was "being constructively discharged." (Pl.'s Opp. at 10.) This position is unavailing. Her feeling that she "had no honorable choice but to resign" (id.) does not qualify as legally equivalent to a constructive discharge. To prevail on a claim of constructive discharge, Plaintiff must allege and

show that the employer deliberately and discriminately created working conditions for her that were "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Ferraro v. Kellwood Co., 440 F.3d 96 (2d Cir. 2006) (citing Pa. State Police v. Suders, 542 U.S. 129, 141 (2004)).  The record in this case reflects nothing of the sort.  Plaintiff has failed to show that Defendant intended by its actions to cause Plaintiff to resign.  See Hill v. Meta Group, 62 F. Supp. 2d 639 (D. Conn. 1999).  The record shows only that Defendants recommended that Enkler, not Plaintiff, be hired for a particular job, a permissible step in the ordinary course of an employer's selection of one of two applicants to fill a vacant position.  The failure to win a promotion in a close application process is not sufficiently intolerable to give rise to constructive discharge.  Cowan v. Prudential Ins. Co. of Am., 703 F. Supp. 177, 190 (D. Conn. 1986).  See also Petrosino v. Bell Atlantic, 385 F.3d 210, 231 (2d Cir. 2004).  "An employee who anticipates little chance of promotion in a particular job may well decide to seek employment elsewhere, but the employee can hardly demonstrate that the job she in fact holds was rendered so intolerable that she was compelled to quit."  Id.

Furthermore, intolerable working conditions are to be judged by the view of a reasonable person and not the employee's subjective feeling.  Sedotte v. Borg-Warner Protective Services Corp., 94 F. Supp. 2d. 251 (D. Conn. 2000).  Plaintiff's feelings that she was constructively discharged and that she had no honorable choice but to resign both reflected her subjective view of her situation after not being hired for the EEC job.  These feelings, experienced before she ever spent a day as Enkler's subordinate, cannot be reasonably said to reflect anything other than Ms. Brescia's personal, emotional, and subjective reaction to being passed over for promotion.  It is not a basis on which a jury could find that a reasonable person would regard the situation as so

intolerable as to feel compelled to resign. Because Ms. Brescia's resignation cannot be found by a reasonable jury to have been compelled by intolerable working conditions deliberately created by the Defendants, there is no genuine issue as to this material fact. This is true as to the claim of constructive discharge as an element of both claims of unequal treatment and tortious interference with Plaintiff's contractual rights, discussed below.

**C.     Tortious Interference with a Contractual Relationship**

Defendants argue that Plaintiff's claim of Defendants' intentional interference with her contractual rights must fail. Plaintiff alleges that Mr. Rickert made representations to her about recommending her for the promotion which constituted an implied contract and, as such, she had a beneficial interest not only in her temporary EEC position but also in her "prospective business relationships" with DEP. Because, as discussed above, there is no genuine issue reflected in the record that Defendants intended to cause Ms. Brescia's constructive discharge, Plaintiff's tort claim can survive only if she has shown that Defendants have deliberately interfered with her future business relationships, that is, with her appointment to the permanent position of EEC. However, there is no evidence that Plaintiff had a contractual right to a promotion. As to her claim to consideration for appointment to the EEC job, Plaintiff had nothing more than a unilateral hope, expected only by her. Enkler's hiring did nothing more than frustrate Plaintiff's unilateral expectation that she would get the job, based largely on her claim of favorable consideration allegedly articulated by Mr. Rickert, a claim at odds with his joining the committee recommendation that Ms. Enkler get the job instead. There is also no evidence that Mr. Rickert was authorized to make the appointment on his own, and evidence of the procedure followed–that is, the interviewers' recommendation's being forwarded to the Commissioner, who

actually appointed Ms. Enkler–undermines the claim that Mr. Rickert made a binding promise to Ms. Brescia.  At most, the record would support Plaintiff's entitlement to consideration of her application for the job, an entitlement which does not equal an entitlement to receive the promotion and cannot form the basis of a claim for tortious interference with a contract.  Plaintiff's reliance on <u>Skene v. Carayanis et al.</u>, 103 Conn. 708, 714 (1925), is therefore misplaced.  In <u>Skene</u>, the plaintiff had an enforceable contract expectancy, rather than, as here, a unilateral expectancy in which the employer had made no commitment and as to which there was no evidence of the slightest colorable obligation.

  Moreover, even if Plaintiff had contractual rights regarding her expected job position, nothing in the record substantiates Plaintiff's claim that Defendants tortiously interfered with those rights.  The claim that she was denied consideration of her application does not reflect such interference.  The alleged irregularities in processing her application cannot be found to have been motivated to deny her fair consideration; they reflect fair consideration of both applicants pursuant to the goal of identifying the best qualified person for the EEC job.  Plaintiff also cannot claim that Defendants caused her actual damage.  <u>See</u> <u>Appleton v. Board of Education</u>, 254 Conn. 205 (2000) (where Plaintiff had not proved a claim of tortious interference because, having voluntarily resigned, she did not suffer actual damages from Defendant's actions).  As discussed above, Defendants in this case did not constructively discharge Plaintiff Brescia.  There is nothing in the record which would permit a finding that Defendants knew, or reasonably should have known, that the manner in which they processed the applications and the recommendation they made would have the slightest likelihood of creating so intolerable a working situation as to prompt a reasonable person, much less Plaintiff, to feel compelled to

resign.  Ms. Brescia's resignation was therefore voluntary, and defendants did not cause the loss of her job.  And because Plaintiff was not entitled to be hired to the permanent EEC position, the Court also cannot conclude that Ms. Brescia suffered actual loss by failing to earn the wages associated with that position.

Further, Plaintiff has failed to show the required element of Defendants' intent to interfere with her employment relationship.  Defendants' actions in processing the applications and recommending Ms. Enkler cannot be found to sustain a finding that they were motivated and/or intended to deprive Plaintiff of what she claims she was entitled to, i.e appointment as EEC.  At most the record permits a finding that Defendants applied certain criteria to the applicants and made a recommendation to the Commissioner which was consistent with a relevant consideration of the best suited candidate.  In contesting Defendants' selection of a candidate, Plaintiff effectively claims that she was the only applicant who should have been recommended for the job, a result which could easily have resulted in Enkler's claiming a denial of fair consideration.  Construing the record most favorably to Plaintiff's claims, it cannot be said that there is any basis to find that any Defendant intended or anticipated interference with Plaintiff's rights so as to deprive her of employment benefits to which she was reasonably entitled.  Summary judgment for Defendants on this issue is therefore proper.

Because the Court concludes that Plaintiff has failed to raise genuine issues of material facts on either her Equal Protection or tortious interference claims and that Defendants are accordingly entitled to summary judgment, it need not examine Defendant's claims of qualified immunity.

**IV.   CONCLUSION**

IN SUMMARY, Plaintiff's claims that Defendants treated her differently without a rational basis for doing so and that they tortiously interfered with her rights are unavailing. There being no basis for finding the elements of either claim, Defendants are entitled to summary judgment. Defendants' Motion for Summary Judgment [Doc. No. 51] is hereby **granted.** The case is dismissed and the file will be closed.

SO ORDERED:

Dated at New Haven, Connecticut, November  6 , 2006.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court